LINK: 211

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None | None | |

**Proceedings:**     (In Chambers)

## ORDER RE: PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### I.
### INTRODUCTION

Plaintiffs in this action are former non-exempt employees of Defendants Acosta Sales, LLC, and Acosta, Inc. (together, "Acosta," or "Defendants"), who provided various merchandising services to food and consumer goods retail stores that are Acosta's customers and clients. Plaintiffs' First Amended Complaint ("FAC") alleges that they and other Acosta "merchandisers" have been systematically denied regular and overtime compensation, pursuant to Acosta's policies and practices, in violation of (1) the Fair Labor Standards Act ("FLSA"); (2) the California Labor Code; (3) the California Industrial Welfare Commission Wage Orders; and (4) California Business and Professions Code §§ 17200, et seq. (Docket No. 42 [FAC].)

Plaintiffs now "seek preliminary approval of a proposed $9.9 million non-reversionary, no-claims made class and collective action settlement of state and federal wage and hour claims with Defendants . . . ." (Docket No. 211 [Motion for Preliminary Approval ("Mem.")] at 1.) Acosta joins in the request. (Id.) Because the Court concludes that the Proposed Settlement meets the requirements of Federal Rule of Civil Procedure 23, the motion is **GRANTED**, the proposed settlement classes are provisionally **CERTIFIED**, and the Proposed Settlement is preliminarily **APPROVED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

## II.
## PROPOSED SETTLEMENT

The Proposed Settlement is the result of "multiple exchanges of positions, offers, and counter-offers, as well as rigorous vetting and evaluation of the factual, legal and procedural contentions of the parties" with the assistance of "Hunter Hughes, a very experienced and highly regarded mediator in class action cases, including complex wage and hour disputes." (Mem. at 6 (citing Declaration of Joshua G. Konecky Decl. ("Konecky Decl.") ¶ 19).) Although "[t]he case did not settle at the [October 2012] mediation, . . . the parties made progress toward a potential settlement." (Id.) Mr. Hughes then "facilitated continued negotiations between the Parties, which at all times were conducted at arms-length." (Id. ¶ 20.) On February 20, 2013, Mr. Hughes made a Mediator's Proposal, (Konecky Decl., Ex. 1 (Ex. C)), and the parties subsequently "accepted the mediator's proposal, subject to ratification by Acosta's Board of Directors." (Mem. at 6 (citing Konecky Decl. ¶ 21).) The Board ratified the settlement on March 7, 2013, and the parties filed a Notice of Settlement with the Court on March 8, 2013. (Id. (citing Docket No. 205 [Notice of Settlement]))

Under the Proposed Settlement, "Acosta will pay $9,900,000 to resolve this litigation." (Id. (citing Konecky Decl., Ex. 1 [Settlement Agreement])) The $9.9 million figure (the "Settlement Fund") "is all-inclusive, with the exception of Acosta's employer payroll taxes and the fees and costs of settlement administration, which Acosta will pay separately." (Id.) This entire amount "will be disbursed pursuant to the terms of the settlement agreement, and none of it will revert to Acosta." (Id. ¶ 22.) "In exchange for the benefits provided by Acosta under the Settlement Agreement, Class members will release Acosta and its related entities." (Id. at 11) However, "[t]he release is limited to the claims that were actually pled or could have been pled based on the alleged facts in the proposed Second Amended Complaint." (Id. (citing Settlement Agreement § III.F))

The $9.9 million "will be a direct monetary distribution to approximately 6,000 proposed members of both the FLSA Class and the California class." (Id.) The FLSA Class consists of all Merchandisers who submitted an opt-in consent form and contains 4,353 members. (Id.) The California class contains approximately 2,300 members and is defined as "any Merchandiser employed in the state of California from February 7, 2007, through the date of preliminary approval." (Id.) "570 Acosta Merchandisers are members of both classes." (Id.) And "[e]ach class member will receive his or her share of the settlement fund without having to file a claim form." (Id. at 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

The Settlement Fund will be allocated as follows:

(1) 66% of the fund will pay "the FLSA wage, interest, and liquidated damages claims of FLSA Class members," and this amount "will be apportioned half for unpaid wages and half for liquidated damages";

(2) 32% of the fund will be allotted to payment of "the California wage, interest, reimbursement and penalty claims of California Class members," to be broken down as follows:

> (a) "55%[] to wage claims and interest, non-mileage reimbursement claims, and penalties (not including waiting time penalties)";
>
> (b) "15%[] to mileage reimbursement claims";
>
> (c) "10%[] to waiting time penalty claims"; and
>
> (d) "20%[] to interest;

(3) "2% of the Settlement Fund will be placed in a Reserve Fund" to cover "any late or unexpected payments. Added to this amount will be checks that are mailed to class members and not cashed within 180 days and amounts owed to class members who cannot be located." Any remaining amount will be distributed to the Legal Aid Society of San Francisco – Employment Law Center "as a designated *cy pres* beneficiary . . . because it is a non-profit organization dedicated to pursuing the employment rights of California workers similar to those sought to be remedied in this lawsuit."

(Id. at 7–8 (citing Settlement Agreement §§ III.C.1(a)–(c)))

In addition, the Proposed Settlement provides that "[e]ach Class Member who does not opt-out will be entitled to his or her share of the Settlement Fund based on a formulaic allocation model designed to include important factors that would be essential to determining potential damages at trial under applicable law." (Mem. at 7.) These factors include "the number of workweeks worked during the applicable class period, [a member's] total compensation during the class period, and which claims [a member] . . . hold[s]." (Mem. at 8–9 (citing Konecky Decl. ¶¶ 28–31).) As a general matter, individuals who have worked longer with Acosta and have higher wage rates, will tend to have proportionally more damages." (Id. at 9 (citing Konecky

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

Decl. ¶ 28).) "Similarly, because overtime compensation and other potential damages are based on the employee's regular rate of pay, a class member with a higher hourly wage rate has a more valuable claim than a similar employee with a lower rate." (Id.)

Determining an individual class member's award will consist of three steps: (1) "for the FLSA and California wage claims the total compensation received by all Class Members during the class period will be determined"; (2) "the amount of compensation a class member received during his or her employment during the class period will be determined and calculated as a percentage of that overall compensation paid to the Class"; and (3) "[o]nce that percentage is known, the Class Members will receive their pro-rata share of the available settlement funds." (Mem. at 9 (citing Settlement Agreement § III.C.1.(a)(b)(i)).) A similar method will be employed to determine the California Class Members' share of the California Mileage Reimbursement Fund, "except that the formula will look at how much in the mileage reimbursement was paid to each Class Member, and then their pro rata share will be awarded." (Id. § III.C.1(b)(ii)) Those "[i]ndividuals who are members of both the FLSA Class and California Class will be entitled to the greater of (1) their share of the FLSA Settlement fund plus their share of the amount reserved for payment of California Waiting Time Penalty, Mileage Reimbursement, and Interest claims, or (2) their share of the amount reserved to pay all California claims." (Mem. at 10 (citing Konecky Decl. ¶ 34).)

Plaintiffs estimate "that *after* attorneys' fees and costs the average FLSA Class Member award will be over $900 and the average California Class Member award will be over $850." (Id. at 11 (citing Konecky Decl. ¶¶ 31–32)) "Subject to Court approval, Acosta has agreed to pay up to, and Class Counsel has agreed not to seek nor accept more than $3,300,000 in attorneys' fees plus out-of-pocket expenses." (Id. at 11 (citing Settlement Agreement § III.B.3)) In addition, "Acosta will [] pay $7,500 to each of the Plaintiffs Natasha Lytle, Charles Sutton, Richard Puliselich, and Alvin Johnson, and $2,500 to proposed Plaintiff Kelly Lewis." (Id. § III.B.1) And "Plaintiffs will seek service awards of not more than $500 for each individual who appeared for a deposition in support of Plaintiffs' motion for class certification." (Id.) "The parties will also apply to the Court for a payment of $10,000 to the Labor & Workforce Development Agency as civil penalties in satisfaction of Plaintiffs' PAGA claim." (Id. § III.B.4.)

Finally, "Class members will be notified by first class mail of the settlement." (Id. § III.E.2) "To avoid confusion regarding which class a particular recipient is a member of, four different notices will be sent to class members." (Id.) "FLSA Class members will receive the 'FLSA Class Notice,' California class members will receive the 'California Class Notice,' and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

individuals who are members of both the FLSA Class and the California Class will receive the 'FLSA/California Class Notice.'" (Id.)  In addition, "[a] fourth notice will be provided to a few dozen FLSA Class Members that obtained benefits in a similar lawsuit in Washington state court." (Id.)  The notices will provide an explanation of how the settlement allocations are calculated, each class member's date of employment during the Class Period, total workweeks, and an estimate of the amount of money the individual would receive in the event all class members participate in the settlement." (Id., Ex. A)

## III.
## DISCUSSION

### A. CLASS CERTIFICATION

Where, as here, the proposed settlement involves a proposed class that has not yet been certified, a court must preliminarily certify the proposed settlement class before it can preliminarily approve the class settlement.  See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 619 (1997); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019–23 (9th Cir. 1999).  A class may be certified only if a plaintiff has met all four requirements of Federal Rule of Civil Procedure 23(a), as well as at least one of the three requirements of Rule 23(b).  See Fed. R. Civ. P. 23(a)–(b); Hanlon, 150 F.3d at 1019–22.  Here, Plaintiffs seek certification of two proposed classes—the FLSA Class and the California Class—for settlement purposes.  (Mem. at 17–18.)

Because the Court "conditionally certified Plaintiffs' FLSA claims" on December 16, 2011, (Docket No. 148), and "that Order has remained undisturbed in the litigation," the Court concludes that continued certification of the FLSA class for settlement purposes is appropriate. (Mem. at 17.)  However, the Court must still engage in an analysis of whether the proposed California Class provisionally meets the requirements of Rule 23.

Rule 23(a) requires: (1) that the proposed class be "so numerous that joinder of all members is impracticable"; (2) that there be "questions of law or fact common to the class"; (3) that the representative plaintiff's claims be typical of the class's claims; and (4) that the representative plaintiff will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  These four elements are mandatory prerequisites to a class being certified. Id.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." Hanlon, 150 F.3d at 1022.  Plaintiff seeks certification under Rule 23(b)(3), and in order to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

qualify under that subsection, "a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" Id.; Fed. R. Civ. P. 23(b)(3); (Mem. at 20.) In making this determination, the courts are advised to consider: (1) the class members' interests, if any, in individually controlling the prosecution of separate actions; (2) the extent and nature of any lawsuits concerning the controversy already begun by members of the proposed class; (3) the desirability of concentrating the litigation in the particular judicial forum; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

As discussed in detail below, the Court concludes that Plaintiff has met the requirements of Rules 23(a) and 23(b)(3). The Court will therefore preliminarily certify the proposed settlement class.

### 1. RULE 23(A)

First, Plaintiffs have demonstrated that Rule 23's numerosity requirement is met here. Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be infeasible. The proposed California Class "encompasses approximately 2,300 current and former individuals employed as merchandisers in California at any time from February 4, 2007 through the date of preliminary approval." (Mem. at 18.) This number readily satisfies the numerosity requirement. See Hanlon, 150 F.3d at 1019 (9th Cir. 1998) ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'")

The "commonality" and "typicality" requirements set forth in Rule 23 are also satisfied. For an adequate showing of commonality, Rule 23(a)(2) requires that "claims [] depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores v. Dukes, 131 S.Ct. 2541, 2551 (2011). And Rule 23(a)(3)'s typicality requirement is satisfied where the representative plaintiff's claims are "typical of the claims or defenses of the class." Hanlon, 170 F.3d at 1019 (quoting Fed. R. Civ. P. 23(a)(3)). Here, "[e]ach Plaintiff and each Settlement Class Member was employed by Acosta as a Merchandiser." (Mem. at 19.) In addition, "Plaintiffs allege Acosta's policies and procedures are uniform across the class . . . ." (Id.) Thus, because every class member's claims—including those of the named Plaintiffs— "arise from the same factual nexus," the commonality and typicality requirements are met here. (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

    Finally, Plaintiffs have demonstrated—as required by Rule 23(a)(4)—that the representative Plaintiffs and their counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the Ninth Circuit, courts look for any conflicts of interest that the representative plaintiff and his or her counsel might have with the other class members, and evaluate whether the representative plaintiff will "prosecute the action vigorously on behalf of the class." Staton, 327 F.3d at 957; Hanlon, 150 F.3d at 1020. There is no standard to assess "vigor," but "considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." Hanlon, 150 F.3d at 1021. Here, "Plaintiffs' counsel has a great depth of experience in both employment class action and litigation generally, including the resolution of complex cases through settlement." (Mem. at 21 (citing Konecky Decl., Exs. 2, 3, 4, & 5).) And Plaintiffs have explained the rationale behind settlement, pointing to the fact that, during this "hard-fought litigation" Acosta has "at all times denied the allegations in Plaintiffs' Complaint" and that "Acosta strongly contends that the case cannot be maintained as a class or collective action and has opposed Plaintiffs' efforts to collectively resolve their claims." (Mem. at 1–2 (citing Konecky Decl. ¶¶ 40–41).) Furthermore, Plaintiffs have diligently prosecuted this action and negotiated the Proposed Settlement. (Mem. at 19 (citing Amchem, 521 U.S. at 619 ("Settlement is relevant to a class certification.")).) The Court therefore concludes that the "adequacy of representation" requirement of Rule 23(a)(4) is satisfied.

    In sum, Plaintiffs' proposed California Class satisfies the requirements of Rule 23(a).

    **2. RULE 23(B)(3)**

    In addition to meeting the requirements set forth in Rule 23(a), Plaintiffs "must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)." Hanlon, 150 F.3d at 1022. Plaintiffs urge, just as they argued in their motion for class certification, that the proposed California class "is maintainable under Rule 23(b)(3) as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the controversy." (Mem. at 20.) The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," Amchem, 521 U.S. at 623, and the predominance requirement is clearly satisfied here. Plaintiffs' claims "involve predominantly common factual and legal issues," including "(i) whether Acosta accurately recorded the time spent by merchandisers performing administrative duties, (ii) whether Acosta compensated merchandisers for time spent performing administrative duties, (iii) whether Acosta's mileage and automobile reimbursement policies fail to sufficiently compensate merchandisers for other work-related expenses, [and] (iv) whether Acosta

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

sufficiently reimbursed merchandisers for other work-related expenses, including phone and internet use." (Mem. at 20.)

Rule 23(b)(3)'s "superiority" requirement is also met here. In determining whether class resolution is superior to other methods of adjudication, the Court considers four factors: (1) the class members' interests, if any, in individually controlling the prosecution of a separate action; (2) the extent and nature of any lawsuits concerning the controversy already begun by members of the proposed class; (3) the desirability of concentrating the litigation in the particular judicial forum; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001). These factors favor certification of the proposed California Class. Damages for the overwhelming majority of class members would likely be too low to pursue individually and, as the Ninth Circuit has noted, the pursuit of individual actions would likely result in "less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." Hanlon, 150 F.3d at 1023. Furthermore, the Court is unaware of any individual lawsuits brought by members of the proposed class. With respect to the third factor, concentration of this litigation in California is desirable, as many of the claims against Acosta arise out of the California law. And finally, because this case is poised for settlement, the fourth factor does not apply because the case will not be going to trial. Amchem, 521 U.S. at 620.

### 3. CONCLUSION RE: CLASS CERTIFICATION

The Court therefore concludes that the proposed California Class complies with Rule 23's requirements and should therefore be certified for purposes of the Proposed Settlement. In addition, the previously conditionally-certified FLSA Class remains certified for settlement purposes.

## B. NOTICE

Rule 23(c)(2)(B) requires a court to ensure that the Proposed Notice to the potential class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B)). The notice must state the following in "plain, easily understood language": (1) the nature of the class action, (2) the definition of the certified class, (3) the class's claims, (4) that a class member may appear through an attorney, (5) that this Court will exclude from the class any member so requesting, (6) the time and manner for requesting exclusion, and (7) the binding effect on class members of a final judgment. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

Plaintiffs' Proposed Notices meet the requirements of Rule 23.  As previously discussed, "[d]ifferent notices will be sent to class members that: (1) are part of the FLSA Class only, (2) are part of the California Class only, (3) are members of both the FLSA Class and the California class, and (4) the 35 FLSA Class Member[s] who obtained benefits in the Pearce settlement on similar claims in Washington State Court."  (Mem. at 22.)  The notices "will be tailored to each individual and provide the class member's dates of employment, total workweeks, and an estimate of his or her settlement share in the event that all class members participate in the settlement."  (Mem. at 22–23.)  Because each notice will therefore be slightly different, Plaintiffs "request that the Court approve the form of notice."  (Id. at 23.)

The Proposed Form of Notice meets the seven requirements of Rule 23(c)(2)(B).  It sets forth in "plain, easily-understood language" (1) that this lawsuit "alleges that Acosta failed to pay merchandisers for all hours worked at home and while driving in violation of a federal law known as the Fair Labor Standards Act," (Settlement Agreement at 59); (2) "who is in the settlement," (id. at 60); (3) the class's claims, (id. at 59); (4) that "if [a class member] want[s] his/her] own lawyer, [s/he] may hire one at [his/her] own expense," (id. at 62); (5) that a class member may request to be excluded from the settlement, (id.); (6) the procedure for requesting this exclusion, (id.); and (7) an explanation that "[u]nless [a class member] exclude[s] [him/her]self, [s/he] give[s] up the right to sue Acosta for the [] claims that this settlement resolves."  (Id.)  The Court is therefore satisfied that Rule 23(c)(2)(B)'s requirements have been met here.

## C.  PRELIMINARY APPROVAL OF SETTLEMENT

### 1.  THE LEGAL STANDARD

Finally, Rule 23(e) provides that the claims of a certified class shall be settled or compromised only with the court's approval.  Fed. R. Civ. P. 23(e).  This approval is a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  Nat'l Rural Telecomms. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).  This Order pertains to a preliminary approval; "[c]loser scrutiny is reserved for the final approval hearing."  Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. April 29, 2011).

The central concern of judicial supervision at this stage of the settlement process is to ensure that "[1] the proposed settlement appears to be the product of serious, informed,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotations and citation omitted).

"Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." Officers for Justice v. Civil Svc. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). In the Ninth Circuit, district courts consider at least eight factors in determining whether a proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003); Officers for Justice, 688 F.2d at 615. These factors include: (1) the strength of Plaintiff's case; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) "the amount offered in settlement"; (5) the extent of discovery completed and the stage of the legal proceedings; (6) the experience and opinions of counsel; (7) whether a governmental entity is a participant in the proceedings; and (8) the reaction of the class to the proposed settlement. Staton, 327 F.3d at 959. However, these factors are not exhaustive, and courts have not identified which factors are more salient to the analysis; rather, the relative weight to give each factor varies on a case-by-case basis. Officers for Justice, 688 F.2d at 625.

The proposed settlement must also "fall[] within the range of possible approval." Tableware, 484 F. Supp. 2d at 1079. As case law has defined it, the "range of possible approval" is typically a balancing of the plaintiff's "expected recovery . . . against the value of the settlement offer." See Tableware, 484 F. Supp. 2d at 1079; Vasquez, 670 F. Supp. 2d at 1125. In short, the fundamental inquiry is "substantive fairness and accuracy." Vasquez, 670 F. Supp. 2d at 1125 (quoting Tableware, 484 F. Supp. 2d at 1079). This determination entails a weighing of many of the eight factors listed above. See Tableware, 484 F. Supp. 2d at 1080 (noting that the expected recovery would be lowered by the anticipated expense and complexity of litigation); 6A Fed. Proc., L. Ed. § 12:378 (2011).

Having considered the Proposed Settlement, the Court concludes that it should be preliminarily approved. It is not the product of fraud or overreaching; it lacks any obvious deficiencies; it does not give any improperly preferential treatment to Plaintiff; and it falls within the range of possible approval. The factors and considerations that support this conclusion are discussed in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

### 2. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

There can be little doubt that the negotiations in this case, which were conducted at arm's-length by counsel over the span of several months and with the assistance of a mediator, were serious, informed and noncollusive. The parties were represented by experienced counsel who bargained in an adversarial manner, "each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses . . . ." Tableware, 484 F. Supp. 2d at 1080. The Court is therefore satisfied that the settlement in this case was the result of good faith negotiations.

Furthermore, the Court finds that the settlement is reasonable. Acosta has agreed to pay $9.9 million to resolve this litigation. (Mem. at 6 (citing Settlement Agreement at 28).) Class members are to receive an award calculated to reflect "the number of workweeks worked during the applicable class period, their total compensation during the class period, and which claims they hold." (Id. at 8–9 (citing Konecky Decl. ¶¶ 28–31)) And "[e]ach class member will receive his or her share of the settlement fund without having to file a claim form." (Id. at 7.) Given the general risk, delay, and costs of further litigation, the settlement amount represents a fair and reasonable resolution and gives certain and immediate recovery to the class members.

However, the attorneys' fees figure in the Proposed Settlement gives the Court pause. Plaintiffs explain in their Motion for Preliminary Approval that "Acosta has agreed to pay up to, and Class Counsel has agreed not to seek nor accept more than $3,300,000 in attorneys' fees plus out-of-pocket expenses." (Mem. at 11 (citing Settlement Agreement § III.B.3).) This figure amounts to 33% of the total Settlement Fund. But the "benchmark" attorneys' fees award in the Ninth Circuit is 25%, see Torrisi v. Tuscon Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993), and Plaintiffs offer no explanation why a figure exceeding 25% of the Settlement Fund is reasonable, nor can the Court discern any. The final award for attorneys' fees and reimbursements has yet to be approved, but at this preliminary stage, the Court is unaware of any "special circumstances" that would warrant an adjustment of the benchmark percentage.

### 3. THE PROPOSED SETTLEMENT "FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL"

As a preliminary matter, the Court notes that the seventh factor set forth by the Ninth Circuit in Staton, whether a governmental entity is part of the proceedings, is not at issue in this case. The eighth factor is also not at issue as the class members have not yet received notice of the Proposed Settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

Plaintiffs urge that the first, second, and third factors—which encompass the risks of proceeding with litigation as opposed to settling—clearly demonstrate that preliminary approval of the settlement is appropriate. Plaintiffs insist they "have weighed the risks of continued litigation against the benefits of the proposed settlement and determined it to be more than reasonable" in light of the fact that Plaintiffs' counsel's calculations "estimated that a likely estimate of Acosta's exposure liability could have ranged from $2.5 to $7.4 million on the FLSA claims and approximately $1.2 million on the California claims." (Mem. at 16 (citing Konecky Decl. ¶¶ 37–46, 51–52).) Thus, Plaintiffs believe that "given the[] inherent risks of litigation, a settlement of $9.9 million is a significant result well within range of reasonable considering all the potential outcomes that will provide substantial monetary awards to all Class Members without further delay." (Id.) Thus, the first three Staton factors counsel in favor of approving the Proposed Settlement.

Moreover, the fourth, fifth, and sixth Staton factors regarding the amount of settlement, stage of the litigation, and skill of counsel, also favor approval of the Proposed Settlement. The Settlement confers benefits upon the class members in the form of a $9.9 million Settlement Fund and does not require that a class member file a claim form in order to receive his or her award. (Mem. at 7.) Additionally, the proceedings never moved beyond the pre-trial stage. Finally, as noted in the discussion of class certification, "Plaintiffs' counsel has a great depth of experience in both employment class action and litigation generally, including the resolution of complex cases through settlement." (Id. at 21 (citing Konecky Decl., Exs. 2, 3, 4, & 5); see also DirecTV, 221 F.R.D. at 528 (noting that the opinions of counsel "who are most closely acquainted with the facts of the underlying litigation" are entitled to "great weight").

In conclusion, analysis of the Staton factors supports the preliminary approval of the Proposed Settlement.

## IV.
## CONCLUSION

In light of the foregoing, Plaintiffs' motion is **GRANTED** subject to the Court's comments regarding the attorney fee award and expenses. Both the FLSA and California Settlement Classes are provisionally **CERTIFIED**. The Proposed Notice and Proposed Settlement Agreement are preliminarily **APPROVED**. In accordance with the proposed schedule of events provided by Plaintiff, the Court hereby establishes the following **SCHEDULE**:

LINK: 211

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CV 11-01796 GAF (OPx) | Date | May 6, 2013 |
|---|---|---|---|
| Title | Kevin Dwaine Mitchell et al v. Acosta Sales, LLC et al | | |

Deadline to disseminate class notice: **No later than 30 days after entry of Preliminary Approval Order**

Deadline for filing briefs in support of attorneys' fees application: **21 days after class notice is mailed**

Deadline for class members to file comments in support of or in objection to the settlement or fee application: **45 days after class notice is mailed**

Deadline for class members to opt-out of the settlement: **45 days after class notice is mailed**

Deadline for filing briefs in support of motion for final approval: **7 days after objection and opt-out deadline and/or 21 days before the Fairness Hearing**

Deadline for the parties' replies to any class member objections: **7 days before the Fairness Hearing**

Fairness Hearing: **No less than 105 days after preliminary approval**

**IT IS SO ORDERED.**