JS - 6
LINKS: 216, 224

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN DWAINE MITCHELL, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ACOSTA SALES, LLC, et al,<br><br>　　　　　　　Defendants. | **Case No. CV 11-01796 GAF (OPx)**<br><br>**AMENDED** MEMORANDUM & ORDER REGARDING MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEY'S FEES, AND REIMBURSEMENT OF EXPENSES |

## I.
## INTRODUCTION & BACKGROUND

This Order has been amended to reflect the Court's Order regarding Plaintiffs' September 24, 2013, request for clarification pertaining to the service awards for named Plaintiffs Natasha Lytle, Charles Sutton, Alvin Johnson, and Richard Puliselich. (Docket Nos. 228 and 230.) On September 27, 2013, the Court issued an Order clarifying that Lytle, Sutton, Johnson, and Puliselich are awarded $2,500 in enhancement pay. (Docket No. 230.) Accordingly, this Order has been modified in the following places: 1) on page 5, the words "by half" are changed to "to $2,500;" and 2) on page 13, the amount of "$3,750" is changed to "$2,500."

1          Plaintiffs in this action are former non-exempt employees of Defendants Acosta
2  Sales, LLC, and Acosta, Inc. (together, "Acosta," or "Defendants"), who provided
3  various merchandising services to food and consumer goods retail stores that are
4  Acosta's customers and clients.  Plaintiffs' First Amended Complaint ("FAC") alleges
5  that they and other Acosta "merchandisers" have been systematically denied regular and
6  overtime compensation, pursuant to Acosta's policies and practices, in violation of (1)
7  the Fair Labor Standards Act ("FLSA"); (2) the California Labor Code; (3) the
8  California Industrial Welfare Commission Wage Orders; and (4) California Business
9  and Professions Code §§ 17200, et seq.  (Docket No. 42 [FAC].)
10         After "'multiple exchanges of positions, offers, and counter-offers, as well as
11  rigorous vetting and evaluation of the factual, legal and procedural contentions" of each
12  side, the parties reached a settlement agreement.  (Docket No. 214 [5/6/13 Order] at 2.)
13  And on May 6, 2013, the Court granted Plaintiffs' motion for preliminary approval of
14  the Proposed Settlement.  (Id.)  The Settlement Agreement contemplates that, in
15  exchange for a payment of $9,900,000, members of the Settlement Class "will release
16  Acosta and its related entities."  (Id. (citing Settlement Agreement at 11))  The
17  Settlement class is divided into two groups—the FLSA Class and the California Class.
18  (Id.)  "The FLSA Class consists of all Merchandisers who submitted an opt-in consent
19  form and contains 4,353 members" while "[t]he California [C]lass contains
20  approximately 2,300 members and is defined as 'any Merchandiser employed in the
21  state of California from February 7, 2007, through the date of preliminary approval.'"
22  (Id.)
23         The $9.9 million settlement fund figure will be allocated as follows: (1) 66% of
24  the fund will pay "the FLSA wage, interest, and liquidated damages claims of FLSA
25  Class members," and this amount "will be apportioned half for unpaid wages and half
26  for liquidated damages"; (2) 32% of the fund will be allotted to payment of "the
27  California wage, interest, reimbursement and penalty claims of California Class
28  members"; and (3) "2% of the Settlement Fund will be placed in a Reserve Fund" to

1  cover "any late or unexpected payments." (Id. at 3 (citing Settlement Agreement §§
2  III.C.1(a)–(c))) In addition, any remaining amount will be distributed to the Legal Aid
3  Society of San Francisco – Employment Law Center "as a designated cy pres
4  beneficiary . . . because it is a non-profit organization dedicated to pursuing the
5  employment rights of California workers similar to those sought to be remedied in this
6  lawsuit." (Id.)

7  Each participating Class Member is eligible to receive "his or her share of the
8  Settlement Fund based on an allocation model designed to include important factors that
9  would be essential to determining potential damages at trial under applicable law." (Id.
10 at 3 (citing Docket No. 211 [Motion for Preliminary Approval ("Prelim. Approval
11 Mem.")] at 7)) These factors include "'the number of workweeks worked during the
12 applicable class period, [a member's] total compensation during the class period, and
13 which claims [a member] . . . hold[s]." (Id. (citing Prelim. Approval Mem. at 8–9))
14 "As a general matter, individuals who have worked longer with Acosta and have higher
15 wage rates, will tend to have proportionally more damages." (Id. (citing Prelim.
16 Approval Mem. at 9)) "'Similarly, because overtime compensation and other potential
17 damages are based on the employee's regular rate of pay, a class member with a higher
18 hourly wage rate has a more valuable claim than a similar employee with a lower rate.'"
19 (Id.)

20 "Determining an individual class member's award will consist of three steps: (1)
21 "for the FLSA and California wage claims the total compensation received by all Class
22 Members during the class period will be determined"; (2) "the amount of compensation
23 a class member received during his or her employment during the class period will be
24 determined and calculated as a percentage of that overall compensation paid to the
25 Class"; and (3) "[o]nce that percentage is known, the Class Members will receive their
26 pro-rata share of the available settlement funds." (Id. at 4 (citing Settlement Agreement
27 § III.C.1(a)(b)(i))) A similar method will be employed to determine the California
28 Class Members' share of the California Mileage Reimbursement Fund, "except that the

3

formula will look at how much in the mileage reimbursement was paid to each Class Member, and then their pro rata share will be awarded." (Id. (citing Settlement Agreement § III.C.1.(b)(ii)) "Individuals who are members of both the FLSA Class and California Class will be entitled to the greater of (1) their share of the FLSA Settlement fund plus their share of the amount reserved for payment of California Waiting Time Penalty, Mileage Reimbursement, and Interest claims, or (2) their share of the amount reserved to pay all California claims." (Id.)

Following the Court's preliminary approval of the Settlement, "Notice has been provided to the Class in accordance with the Settlement Agreement." (Docket No. 224 [Motion for Final Approval ("Mem.")] at 2.) "The Claims Administrator mailed Notice to 6,619 employees on June 14, 2013." (Id. (citing Docket No. 224–3 [Declaration of Amanda Horn ("Horn Decl.")] ¶ 6)) Only nine class members have requested to be excluded from the class and only one class member—Mark W. Johnson—has filed an objection to the Settlement. (Id. ¶¶ 10–11; see Horn Decl., Ex. J [Johnson Objection].) The basis of Mr. Johnson's Objection is that "Acosta should be held accountable for laws broken and should adhere to FLSA laws in the future, and employees should be paid back for all hours worked." (Johnson Objection.) Although the Court understands Mr. Johnson's desire for a 100% recovery, the Court agrees that "the objection should be overruled because it does not account for the risks and delays of continued litigation, including the uncertain procedural and legal landscape underlying [the] claims," which are addressed in detail below. Furthermore, even factoring in these requests for exclusion and Mr. Johnson's Objection, "99.9% of the Class members are participating in the Settlement." (Mem. at 3.)

On May 6, 2013, the Court preliminarily approved the Settlement Agreement and provisionally certified both the FLSA and California Settlement Class. (Docket No. 214 [5/6/13 Order].) Plaintiff now moves for final approval of the Settlement Agreement, class certification, and final approval of the Plan of Allocation. (Mem.) In addition, Plaintiff seeks approval of its request for $2.97 million in attorney's fees,

4

$195,965.79 in costs, and enhancement awards "in the amount of up to $7,500" for each of the named plaintiffs and $500 for each of eight opt-in class members who were deposed. (Id. at 12.) For the reasons explained in greater detail below, the Court **GRANTS** the motion to finally approve the Settlement Agreement, certify the class, and approve the Plan of Allocation. The Court also **GRANTS** the motion to approve the payment of attorney's fees and expenses. Finally, Lead Plaintiffs' request for enhancement awards is **GRANTED**, but the Court reduces four of the awards to $2,500, as set out below.

## II.

## DISCUSSION

### A. MOTION FOR FINAL APPROVAL OF SETTLEMENT

#### 1. LEGAL STANDARD

Under FRCP Rule 23(e), "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. Nat'l Rural Telecomms. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. Id. A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); accord In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).

Circuit law teaches that the court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

  (3) the risk of maintaining class action status throughout the trial;

  (4) the amount offered in settlement;

  (5) the extent of discovery completed and the stage of the proceedings;

  (6) the experience and views of counsel;

  (7) the presence of a governmental participant; and

  (8) the reaction of the class members to the proposed settlement.

Torrisi, 8 F.3d at 1375; accord Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998); Hanlon, 150 F.3d at 1026.  "In addition, the settlement may not be the product of collusion among the negotiating parties."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458.  These factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances.  Torrisi, 8 F.3d at 1376.  In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval."  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 525–26 (citing Torrisi, 8 F.3d at 1376).  In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."  Linney v. Cellular Alaska P'ship, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d at 1234.

  **2. APPLICATION OF TORRISI FACTORS**

   *a. Strength of Plaintiffs' Case*

Plaintiffs urge that, "[a]s demonstrated by counsel's submission in support of the motion for preliminary approval, the substantial benefits offered to the class by the Settlement are excellent in light of the risks and delays of continued litigation."  (Mem. at 5 (citing Docket No. 211–2 [Declaration of Joshua G. Konecky in Support of Preliminary Approval ("Prelim. Konecky Decl.")] ¶¶ 49–52.).)  Plaintiffs' Counsel explains that "[w]hile [they] remained confident in, and committed to, the merits of Plaintiff's case," that a number of risks existed at "each stage [of the case] going

6

forward." (Konecky Decl. ¶ 48.) Specifically, "the Court had not ruled on Plaintiffs' Rule 23 motion for class certification and had indicated during the hearing that Plaintiffs would have difficulty meeting the Rule 23(b)(3) predominance requirement." (Id.) In addition, "Acosta was poised to file a motion for decertification of the FLSA collective." (Id.) "Acosta also would have filed a motion for summary judgment on the FLSA and California claims arguing that Plaintiffs' class proof was not sufficient to demonstrate a class-wide violation." (Id.) Finally, even "assuming Plaintiffs prevailed during the liability phase of the class action trial, the measure of damages still would have been hotly contested" and throughout all of these proceedings, "Acosta would maintain that it properly compensated the Merchandisers for all hours worked and that class members did not incur unreimbursed expenses." (Id. ¶¶ 49–50.)

Plaintiff thus urges that further prosecution of this case would undoubtedly be time-consuming, complex, and expensive, both in attorney's fees and costs and the presentation of expert testimony, with no guarantee of a successful outcome. The negotiated resolution of this case avoids this uncertainty and weighs in favor of granting final approval of the settlement.

### b. *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

The Court has touched on this factor in discussing the strength of Plaintiff's case above. The Court's assessment of the "risk, expense, complexity, and likely duration" prong of the Torrisi analysis must be balanced against the anticipated expense of litigation. Nat'l Rural Telecomms. Coop., 221 F.R.D. at 526. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Id. (quoting 4 A. Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)).

This action has been litigated for over two years by competent counsel on both sides. Without a settlement, the case would likely last far longer, and entail significant risk and expense. A substantial amount of time and effort has already been put into this

case, and Plaintiffs urge that "litigating this case through trial would have required several thousands of additional attorney hours (per side) and significant additional out-of-pocket expenses." (Konecky Decl. ¶ 51.) Specifically, "[w]ith respect to litigation risk, Acosta vigorously argued throughout the case that it permitted Merchandisers to record all their work time, including work at home." (Id. ¶ 40.) "Acosta argued that if Merchandisers did not record all their time, this was not the fault of the time keeping system" and that "even if Merchandisers did not record all their time at home, the time spent on administrative work was either de minimus or less than Plaintiffs' estimates . . . ." (Id.) Finally, "Acosta presented evidence, including class member testimony, that some class members had little or no damages." (Id.) Thus, "the result after further litigation, trial, and appeals was highly uncertain, except for the fact that it would mean years of further delay." (Id. ¶ 52.)

The Settlement Agreement, in addition to minimizing delay, guarantees a recovery to Class Members. Thus, the risks and potential expenses of further litigation weigh in favor of final approval, consistent with the policy preferring settlement over further time-consuming litigation. Nat'l Rural, 221 F.R.D. at 525–26.

### c. *The Risk of Maintaining Class Action Status Throughout Trial*

The two classes in this case—the FLSA Class and the California Class—have been preliminarily certified for settlement purposes. (See 5/6/13 Order at 9.) And the Court agrees that, as discussed above, Plaintiffs faced real risks that they "might not obtain class certification under Rule 23 (the Court's tentative opinion during the hearing on this motion was that common questions did not predominate under Rule 23(b)(3))" and that Acosta "would move to decertify the FLSA collective and move for summary judgment." (Mem. at 6; see also In re OmniVision Technologies, Inc., 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2008) (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.")).) While the Court takes no position as to

Plaintiffs' likely success in maintaining Class status through trial, settlement avoids all possible risk. This factor therefore weighs in favor of final approval of the settlement.

### d. The Amount Offered in Settlement

A "settlement should stand or fall on the adequacy of its terms." In re Corrugated Container Antitrust Litig., 643 F.2d 195, 211 (5th Cir. 1981). The Court examines "the complete package taken as a whole, rather than the individual component parts," to determine whether the proposal is fair. Officers for Justice v. Civil Svc. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982).

Under the terms of the Settlement Agreement, Acosta has agreed to pay $9.9 million, a figure which Plaintiffs urge is "eminently reasonable in light of calculations that showed that Acosta's exposure under the FLSA ranged from between $2.5 million and $7.4 million (depending on whether Plaintiffs obtain liquidated damages and the three-year liability period) and approximately $1.2 Million for the California claims." (Mem. at 6 (citing Konecky Decl. ¶¶ 39, 43).)

Plaintiff argues that this figure is particularly favorable in light of the fact that "the estimates did not even account for the significant litigation risks presented by Defendants' arguments and evidence that: many class members did not suffer damages; others were overpaid; and the expense reimbursement policies actually compensated class members for their actual automobile and other costs." (Id. (citing Konecky Decl. ¶¶ 40–46)) "A negative result at any one of these junctures could effectively wipe out any recovery for more than 6,700 employees." (Mem. at 6.)

The Court therefore agrees that, "[f]aced with these substantial risks, the benefits to the Class are overwhelmingly favorable," (id.), and concludes that, on the whole, the terms of the Settlement are fair and weigh in favor of granting final approval.

### e. The Extent of Discovery Completed and the Stage of the Proceedings

The amount of discovery completed affects approval of a stipulated settlement because it indicates whether the parties have had an "adequate opportunity to assess the

9

pros and cons of settlement and further litigation." In re Cylink Sec. Litig., 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003). Nevertheless, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239 (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir. 1982)).

Here, Plaintiffs urge that "[s]ubstantial investigation and discovery were completed prior to the Settlement." (Mem. at 7.) Prior to filing suit, "counsel for Plaintiffs conducted substantial research and investigation to verify the scope and nature of the conduct alleged" and, once the suit was filed, "Plaintiffs propounded extensive written discovery, including numerous rounds of document requests and interrogatories." (Id.) In addition, Plaintiffs filed two motions to compel discovery and "took ten corporate and fact depositions in California and Florida, as well as 14 depositions of individuals who submitted declarations in support of Acosta." (Id. at 8.) "The Settlement is thus the result of a thorough and extensive investigation, formal and informal discovery, and a thorough evaluation of Plaintiffs' claims." (Id. (citing Konecky Decl. ¶¶ 2–21)) The Court is therefore persuaded that the parties had sufficient information to make an informed decision about settlement and this factor weighs in favor of final approval.

### *f. The Experience and Views of Counsel*

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural, 221 F.R.D. at 528 (quoting In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). Furthermore, a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties. In re First Capital Holdings Corp. Fin. Prods. Secs. Litig., MDL Docket No. 901 (JGD), 1992 U.S. Dist. LEXIS 14337, at *5–6 (C.D. Cal. June 10, 1992).

"Here, Class Counsel is extremely qualified and well-informed about the facts and law of the case and believe this proposed Settlement to be an excellent result." (Mem. at 8 (citing Konecky Decl. ¶ 33).) "Schneider Wallace Cottrell Konecky LLP is a leading private plaintiff firm in employment and civil-rights class actions" and its "partners and attorneys have litigated major wage and hour class actions, have won several prestigious awards, and sit on important boards and committees in the legal community." (Konecky Decl. ¶ 55.) "Plaintiffs are also represented by Eric H. Gibbs and Matthew George of Girard Gibbs LLP, Michael D. Singer and Kimberly Neilson of Cohelan Khoury & Singer, and Steve Morris of Morris & Associates." (Id.) Plaintiffs urge that "[t]hese firms are well experienced in employment, wage and hour, and class and complex litigation." (Id. ¶ 57.) In addition, the settlement negotiations were conducted at "arm's-length before a well-respected class action mediator." (Mem. at 1.) The Court is therefore confident that the settlement was the product of rational compromise on the part of all involved, and that the negotiations were in no way collusive. Accordingly, this factor also weighs in favor of granting final approval.

### g. The Presence of a Governmental Participant

As noted in this Court's May 2013 Order, this factor is not at issue in this case because there was no governmental participation in this case. (5/6/13 Order at 1.) Accordingly, to the extent this factor impacts the Court's analysis, it weighs in favor of granting final approval.

### h. The Reaction of Notified Class Members to the Proposed Settlement

#### i. Notice Procedures

Pursuant to the Court's Order preliminarily approving the Settlement, "the Court-appointed third party administrator sent an individually tailored settlement Notice to approximately 6,719 potential class members . . . ." (Mem. at 1 (citing Horn Decl. ¶ 6).) Nine class members opted out of the Settlement and one class member, Mark W. Johnson, filed an objection. (Id.) However, as discussed in the "Introduction & Background" to this Order, Mr. Johnson's desire that each employee recover 100% of his or her allegedly

lost wages—while understandable—does not render unreasonable the $9.9 million settlement figure Acosta has agreed to pay.

### ii. Conclusion Regarding Class Reaction

Thus, 99.9% of the class members voiced no objection to the Settlement. The Court therefore concludes that the reaction of the Class weighs in favor of granting final approval. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of [the] proposed class settlement . . . are favorable to the class members." Nat'l Rural, 221 F.R.D. at 529.

### 3. CONCLUSION RE: MOTION FOR FINAL APPROVAL

Based on the above analysis, the Court concludes that, on balance, the Torrisi factors weigh in favor of granting final approval of the Settlement Agreement, because it is fundamentally fair, adequate, and reasonable.

### 4. FINAL CERTIFICATION

In accordance with its May 6, 2013 Order, the Court confirms its prior finding that the Settlement Classes comply with the requirements of Rules 23(a) and 23(b)(3), and should therefore be certified for purposes of settlement. (See 5/6/13 Order at 8.)

### 5. FINAL APPROVAL OF PLAN OF ALLOCATION

The Plan of Allocation, like the class settlement as a whole, must be fair, reasonable, and adequate. Omnivision, 559 F. Supp. 2d at 1045 (N.D. Cal. 2008); see also Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1284–85 (9th Cir. 1992). It is reasonable to allocate settlement funds to class members based on the extent of their injuries. Omnivision, 559 F. Supp. 2d at 1045. The Court finds that the proposed Plan of Allocation is reasonable.

As outlined in detail in the "Introduction & Background" section of this Order, the $9.9 million will be a direct monetary distribution" to the approximately 6,000 FLSA and California class members. (5/6/13 Order at 2.) And "'[e]ach class member will receive his or her share of the settlement fund without having to file a claim form.'" (Id. (citations omitted)) In addition, notice to the settlement classes was provided "via first-

class U.S. Mail . . . on June 14, 2013." (Horn Decl. ¶ 6.) "Notices that were returned by the U.S. Postal Service with forwarding address information were promptly remailed to the updated address provided." (Id. ¶ 7) These procedures comport with due process. The Court accordingly finds the Plan fair and reasonable.

### 6. CONCLUSION RE: MOTION FOR FINAL APPROVAL

For the foregoing reasons, Plaintiff's motion for final approval of the Settlement Agreement, Class Certification, and Plan of Allocation is **GRANTED**.

## B. MOTION FOR ATTORNEY FEES AND EXPENSES

Plaintiff additionally seeks this Court's approval of (1) an attorney fee payment of $2.97 million; (2) reimbursement of $191,637.35 in costs; and (3) enhancement payments to each of the Lead Plaintiffs of up to $7,500 and to the eight opt-in class members in the amount of $500. (Docket No. 216 [Motion for Attorney's Fees ("Fees Mem."); Mem. at 10.) The Court **GRANTS** in part Plaintiffs' motion, with respect to the request for attorney's fees and expenses. In addition, the Court **GRANTS** the requests for enhancement pay, **with the caveat that four of the Lead Plaintiffs are to receive $2,500 rather than the requested $7,500.**

### 1. ATTORNEY'S FEES

#### *a. Legal Standard*

Circuit law teaches that class action plaintiffs' attorney fees may be based on a percentage recovery from a common fund. See Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002); Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989); see also Torrisi, 8 F.3d at 1376. If an attorney seeks a percentage recovery in a class action, twenty-five percent of the common fund has been established as the "benchmark" award in the Ninth Circuit. Torrisi, 8 F.3d at 1376. However, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). An assessment of

the reasonableness of the fee request is to be determined by consideration of multiple factors. The trial court in Martin v. Ameripride Servs., Inc., noted:

> The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.

2011 U.S. Dist. LEXIS 61796, at *24 (S.D. Cal. June 9, 2011) (citing Vizcaino, 290 F.3d at 1048–50). Vizcaino reiterated that the choice of "the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." 290 F.3d at 1048. As discussed in detail below, the Court concludes that the lodestar calculation figure of $2.97 million is the appropriate award in this case.

### b. Application

#### i. Results Achieved

As discussed at length above, the Court finds that counsel achieved a favorable result for the Class. Under the terms of the Settlement Agreement, Plaintiffs' Counsel has achieved "a $9,900,000 non-reversionary settlement that will result in substantial cash payments to the members of the settlement class." (Fees Mem. at 20.) "In real terms, the value of the settlement actually exceeds $10,000,000, as Acosta will pay an additional several hundred thousand (approximately $100,000 in settlement administrative costs and the employer's share of payroll taxes)." (Id.) "In addition, current and future Acosta merchandisers stand to benefit from institutional changes Acosta made after Plaintiffs filed the action." (Id.) Accordingly, this factor weighs in favor of granting the $2.97 million award to Class counsel.

#### ii. Contingent Nature of the Fee and Risks of Litigation

As the Ninth Circuit explains, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994). Here, "Counsel undertook all the risks of this difficult and costly litigation on a completely contingent fee basis."

14

(Fees Mem. at 21.) "As early as Acosta's motion to dismiss, Plaintiffs and the Court were informed that 5 previous cases brought against Acosta on the same or similar issues had been dismissed or decertified without achieving any class relief." (Id.) In addition, "Acosta's vigorous and well-resourced defense further confronted Plaintiffs' counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case." (Id.) The Court agrees that "[t]he challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class here are precisely the reasons for multipliers in contingency fee cases." (Id. (citing Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (2001)) The Court therefore concludes these factors weigh in favor of awarding the lodestar figure.

### iii. Skill Required and the Quality of the Work

Plaintiff urges that Counsel "provided first-rate representation to the Plaintiffs and settlement class." (Fees Mem. at 19.) "[T]his case involved difficult and complex issues, a formidable and well-resourced defendant, and a challenging legal landscape for certifying employment class actions." (Id. (citations omitted)) Counsel "worked closely with the named Plaintiffs, opt-in Plaintiffs and class members to enable them to present their stories in sworn testimony and to stand up to aggressive and sophisticated questioning by defense counsel." (Id. at 20.) In addition, Counsel "conducted extensive legal research and developed innovative legal strategies to navigate around many of the pitfalls that doomed previous cases against Acosta and other similar litigation." (Id.) Accordingly, the Court is satisfied that the lodestar figure, which is comfortably within this range, appropriately accounts for the skill required and the quality of work performed by Lead Counsel in this case.

### iv. Burdens Carried by Counsel

Class counsel has declined to argue that it faces unique circumstances compared to other attorneys who serve as class counsel. To be sure, in accepting this case, counsel took on significant—if customary—risks: there were numerous obstacles in continuing on

15

with litigation, and Lead Counsel worked entirely on a contingent fee basis. Accordingly, the Court views this factor as neutral.

### v. Awards Made in Similar Cases

"[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." Vizcaino, 290 F.3d at 1051, n.6 (citing In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998) (quoting 3 Newberg § 14.03 at 14–5)); see also Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher."). Here, Plaintiffs' Counsel's requested fee is based on a multiplier of 1.14 and is substantiated by declarations and time records demonstrating that "Plaintiffs' counsel allocated work efficiently and avoided unnecessary duplication of effort." (Fees Mem. at 16, 22.)

Furthermore, a cross-check of awards made in similar cases calculated as a percentage of the common fund demonstrates that the fee request here—which amounts to 30% of the fund—is reasonable. "[N]umerous courts have held that the accepted range of percentage recoveries from a common fund is within 20%–50% of the fund." (Id. at 23 (citing Cicero v. DirecTV, Inc., 2010 WL 2991486, at *17 (C.D. Cal. July 27, 2010) ("Other case law surveys suggest that 50% is the upper limit, with 30–50% commonly awarded in cases in which the common fund is relatively small."); Williams v. Coscto Wholesale Corp., No. 2-cv-2003, 2010 WL 2721452, at *17 (S.D. Cal. July 7, 2010) (observing that the typical range is 20 to 50 percent); Chesher v. Neyer, No. 1:01-cv-00566, 2007 WL 4553908, at *7 (S.D. Ohio Dec. 19, 2007) (noting that in the Sixth Circuit, "the percentage awarded typically rang[es] from 20 to 50 percent of the common fund.") The Court therefore concludes that an award of the $2.97 million lodestar figure is appropriate in this case.

///

### vi. Conclusion

The Court finds that Plaintiffs' Counsel has competently performed its expected duties as Class counsel, and awards Counsel the requested $2.97 million lodestar figure.

## 2. REIMBURSEMENT OF COUNSEL'S EXPENSES

Plaintiff also seeks approval for reimbursement of counsel's expenses for the prosecution of this action in the amount of $191,637.52. (Fees Mem. at 25.) "The majority of these expenses were expended on traveling to and attending depositions, hearings and mediation, as well as the actual costs of deposition transcripts and mediation fees." (Id.) "The remaining expenses relate to filing costs, service costs, copying and postage charges, costs, and other incidental expenses directly related to the prosecution of this action. (Id. (citing Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (Counsel "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'")).

The Court finds that these expenses were a reasonable and necessary part of the litigation, and are of a type customarily billed to a fee-paying client. See In re Immune Sec. Litig., 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("Filing fees and photocopies are also a necessary expense of litigation, in particular complex securities class action litigation"); Greenspan v. Auto. Club of Mich., 536 F. Supp. 411, 417 (E.D. Mich. 1982) (awarding costs for telephone, printing and postage expenses); Robinson v. Ariyoshi, 703 F. Supp. 1412, 1436-37 (D. Haw. 1989), rev'd on other grounds, 933 F.2d 781 (9th Cir. 1991) (agreeing that online research is "an essential tool of a modern efficient law office" and that such costs should be treated as "expenses normally billed to fee-paying clients"); Yong Soon Oh v. AT&T Corp., 225 F.R.D. 142, 154 (D.N.J. 2004) (reimbursing mediation fees because they are "incidental to litigation").

Because the Court finds that Class counsel's expenses were both reasonable and necessary to the litigation, the Court awards **$191,637.52** in costs.

///

### 3. ENHANCEMENT AWARDS TO LEAD PLAINTIFFS

Class Counsel "move for an enhancement award for each of the named Plaintiffs in the amount of up to $7,500 to compensate them for initiating this action, the substantial hours they worked to advance this case, risks undertaken for the payment of costs, the impact of stigma on future employment opportunities, as well as a general release of all claims arising from their employment." (Mem. at 12 (citing Docket No 211-4 [Declaration of Natasha Lytle ("Lytle Decl.")]; Docket No. 211–5 [Declaration of Charles Sutton ("Sutton Decl.")]; Docket No. 212–4 [Declaration of Richard Puliselich ("Puliselich Decl.")]; Docket No. 212–2 [Declaration of Alvin Johnson ("Johnson Decl.")]; Docket No. 212–3 [Declaration of Kelly Lewis ("Lewis Decl.")]).) Counsel also seeks awards of $500 each for eight opt-in class members who "assisted in obtaining FLSA collective action certification by responding to requests for production of documents and special interrogatories as well as sitting for depositions." (Mem. at 14.)

In assessing the reasonableness of an enhancement payment, several district courts in the Ninth Circuit have applied the five-factor test set forth in the Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299–300 (N.D. Cal. 1995), which involves analysis of

> (1) the risk to the class representative in commencing a class action, both financial and otherwise, (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit or lack thereof, enjoyed by the class representative.

Van Vranken, 901 F. Supp at 299–300. With respect to Alvin Johnson, the Court concludes that an enhancement award of $2,500 is appropriate. In his declaration, he estimates he devoted a total of 50 hours to his lawsuit. (Johnson Decl. ¶ 6.) In addition, he avers that he had to miss 8 hours of work which would have been compensated at $12

per hour and 4 hours of work for which he would have earned $10 per hour. (Id. ¶ 4.) Even if Mr. Johnson had been forced to miss work during each of the fifty hours he spent working on the case—and even if he had been compensated at $12 an hour for this work—he would still have lost only $600. An enhancement award of $7,500 therefore appears excessive and the Court concludes that an award based on a rate of $50 per hour is very generous and more than reasonable. The Court also discounts Mr. Puliselich's requested award as he avers he spent only 56 hours on the case over the course of two years. In addition, he provides no information as to his hourly wage or whether he was forced to miss work in order to assist with this case. Similarly, Ms. Lytle spent 54 hours on the case and lost $38 worth of wages and Mr. Sutton devoted 55 hours to case, though he provides no information regarding lost wages. (Lytle Decl. ¶ 4; Sutton Decl. ¶ 6.)

Accordingly, the Court awards Johnson, Puliselich, Lytle, and Sutton $2,500 in enhancement pay. The Court awards Ms. Lewis a higher award – $3,750, as she remained employed with Acosta during the majority of the litigation and therefore assumed a greater risk by participating as a named plaintiff in the action. (Lewis Decl. ¶ 2.) The Court also concludes that Plaintiffs' Counsel's request for $500 for each of the eight opt-in class members who was deposed is reasonable.

## III.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for final approval of the proposed settlement, class certification, and final approval of the plan of allocation is **GRANTED**. The motion for approval of attorney's fees and reimbursement of costs is **GRANTED**. The motion for incentive awards is **GRANTED AS MODIFIED ABOVE.**

**IT IS SO ORDERED.**

DATED: October 7, 2013

_____
Judge Gary Allen Feess
United States District Court